Joseph A. Gutierrez, Esq.
Nevada Bar No. 9046
Joseph N. Mott, Esq.
Nevada Bar No. 12455
Danielle J. Barraza, Esq.
Nevada Bar No. 13822
**Maier Gutierrez & Associates**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone: 702.629.7900
Facsimile:  702.629.7925
E-mail:    jag@mgalaw.com
           djb@mgalaw.com

*Attorneys for Plaintiff Rudi Jimenez*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RUDI JIMENEZ, an individual, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| TIJUANA, LLC, d/b/a ADVANCE MEDICAL STAFFING, d/b/a RAPID TEMPS, INC., a domestic limited liability company; DOES I-X; and ROE BUSINESS ENTITIES I-X, inclusive, | |
| Defendants. | |

**COMPLAINT WITH JURY DEMAND**

Plaintiff RUDI JIMENEZ, ("Plaintiff"), by and through her attorneys of record, the law firm Maier Gutierrez & Associates, hereby demands a trial by jury and complains and alleges against the above named defendant, TIJUANA, LLC, d/b/a ADVANCE MEDICAL STAFFING, d/b/a RAPID TEMPS, INC. a domestic limited liability company; DOES I-X; and ROE BUSINESS ENTITIES I-X, inclusive, as follows:

/ / /

**JURISDICTION, VENUE AND LEGAL BASIS FOR THIS ACTION**

1. This Court possesses jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 since "a substantial part of the events or omissions giving rise to the claim[s] occurred" in Nevada.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

4. This civil action is brought by Plaintiff pursuant to federal common and statutory law.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5. On or about September 24, 2019, Plaintiff filed a formal Charge of Discrimination with the Nevada Equal Rights Commission ("NERC"), dual-filed with the Equal Employment Opportunity Commission ("EEOC"). This filing fulfilled Plaintiff's obligation to initiate an administrative claim before filing suit.

6. In the NERC filing, Plaintiff alleged facts demonstrating that she had been subjected to sex and disability discrimination based on her pregnancy status by her former employer, TIJUANA, LLC, d/b/a ADVANCE MEDICAL STAFFING, d/b/a RAPID TEMPS, INC. ("Defendant" or "AMS").

7. On or about February 11, 2020, the NERC mailed Plaintiff a "Notice of Right to Sue" letter (*See* **Exhibit 1**) stating that she would have within 90 days of the letter's receipt to file suit.

8. Accordingly, Plaintiff has met all administrative prerequisites to bring this lawsuit.

**PARTIES**

9. Plaintiff RUDI JIMENEZ is, and at all times pertinent hereto was, a resident of Clark County, Nevada.

10. Upon information and belief, defendant TIJUANA, LLC, d/b/a ADVANCE MEDICAL STAFFING, d/b/a RAPID TEMPS, INC. is, and at all times pertinent hereto was, a domestic limited liability company authorized to do business in Clark County, Nevada.

11. TIJUANA, LLC is the corporate entity that issued paychecks to Plaintiff.

2

12. Upon information and belief, TIJUANA, LLC does business as Advance Medical Staffing, with an operational address of 3620 N Rancho Dr. Suite 102, LAS VEGAS, NV 89130.

13. Plaintiff is not familiar with the complex corporate interrelationships through which the named Defendant operates its companies, including Advance Medical Staffing, where Plaintiff was employed. The true names and capacities, whether individual, corporate, associate, partnership or otherwise, of the Defendants herein designated as DOES I through X and ROE CORPORATIONS I through X, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will seek leave of the Court to insert the true names and capacities of such Defendants when the same have been ascertained and will further seek leave to join said Defendant in these proceedings.

## GENERAL ALLEGATIONS

14. Around August 6, 2018, Plaintiff commenced her employment at AMS.

15. During the course of her employment at AMS, Jimenez performed her job duties in accordance with AMS's standards and policies. At no point did AMS give Jimenez a negative performance review, put her on a performance plan or corrective action plan, or warn her about any legitimate issues that would have warranted her termination.

16. On or around November 2018, AMS pitched a promotion opportunity to Plaintiff, asking her if she would move to the role of a Staff Specialist in the Las Vegas Per Diem Department. This new role involved additional responsibilities and duties for Plaintiff, including but not limited to: person-to-person interviewing; drug screening; giving N95 fit tests; and conducting meet-and-greets with the major local facilities. Plaintiff accepted this new position at AMS and was excited to be moving up in the company.

17. On or around January 10, 2019, Plaintiff informed her Branch Manager at AMS, Michelle Feador ("Feador"), that she was pregnant.

18. Over the course of the next few months following Plaintiff's pregnancy announcement at work, AMS Branch Manager Feador made a number of inappropriate and harassing comments regarding Plaintiff's pregnancy, and denigrated Plaintiff for experiencing side effects from the pregnancy. Further, AMS began to discriminate against Plaintiff on the basis of her pregnancy.

19. Specifically, AMS Branch Manager Feador began singling out Plaintiff and making inappropriate comments to her regarding her pregnancy. For example, on or around late January 2019/early February 2019, AMS Branch Manager Feador pulled Plaintiff aside and told her that she needed to put 100% into her job despite her pregnancy. Plaintiff responded that she was doing her best and asked exactly what was wrong with her performance. AMS Branch Manager Feador refused to provide any specifics, but continued broadly generalizing Plaintiff's work as insufficient and claimed that the pregnancy was affecting her work. These comments hurt Plaintiff and made her feel like she was being set up to be terminated, as AMS was making generalizations about work performance without providing any specific criticisms. Non-pregnant employees were not subjected to such comments.

20. On or around February 2019, Plaintiff was prescribed medication for her morning sickness. AMS Branch Manager Feador informed Plaintiff that she "better take those pills because your pregnancy is really starting to affect your work here at the office." Once again, Plaintiff asked for specifics, but AMS Branch Manager Feador provided none.

21. On or around late February 2019, Plaintiff asked AMS Branch Manager Feador about AMS's policy regarding maternity leave. Plaintiff explained that she understood AMS's policy provided up to 90 days off for new mothers but asked for clarification. AMS Branch Manager Feador laughed and said, "There's no way you'll be approved for 90 days of leave. I know some girls who were pregnant, and they were back within 2 weeks. If you think you need 90 days off, I might as well start looking for your replacement now." AMS Branch Manager Feador also commented that if Plaintiff was hoping for 90 days off, then she might as well terminate Plaintiff right then and there so that Plaintiff could go and collect "unemployment or welfare."

22. On or around March 2019, Plaintiff submitted a request for intermittent time off to AMS, as well as a note from her doctor. AMS Branch Manager Feador took the paperwork, but made a degrading comment about how "this is a full-time job that requires 40 hours of work." This made Plaintiff fear that she would be punished for taking medical time off related to her pregnancy.

23. On or around March 25, 2019, AMS Branch Manager Feador pulled Plaintiff aside at the end of her shift and terminated her employment at AMS. When Plaintiff asked for the reason for

her termination, AMS Branch Manager Feador said, "You haven't been the same since your pregnancy began and you've really been letting me down lately." No specifics were provided as to exactly how Plaintiff was allegedly underperforming her job duties. AMS Branch Manager Feador broadly claimed that Plaintiff was losing focus and that loss of focus "is not a pregnancy symptom." Plaintiff offered to provide AMS a note from her treating physician explaining any loss of focus, but AMS Branch Manager Feador said that was not necessary and the company's decision was final, regardless of what medical support Plaintiff may have.

24. At no point was Plaintiff notified about any specific job performance deficiencies during her time at AMS.

25. At no point did AMS give Plaintiff a write-up for any issues, including attendance or punctuality issues.

26. Plaintiff has struggled significantly with the emotional fallout over AMS singling her out and terminating her based on her pregnancy status. Plaintiff has suffered and continues to suffer from anxiety, stress, and emotional distress.

## FIRST CLAIM FOR RELIEF

**Violation of Title VII of the Civil Rights Act – 42 U.S.C. § 2000e *et seq.* as amended by the Pregnancy Discrimination Act of 1978, Sex Discrimination (Disparate Treatment)**

27. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

28. Plaintiff is a member of a protected class as a female who was pregnant.

29. During her employment at AMS, Plaintiff performed her job duties according to AMS's legitimate expectations.

30. During her employment at AMS, Plaintiff suffered from an adverse employment action. Specifically, Plaintiff's employment at AMS was terminated after being subjected to numerous inappropriate and degrading comments, such as:

- AMS Branch Manager Feador's comment to Jimenez that "You need to be able to put 100% into your job despite your pregnancy."
- AMS Branch Manager Feador's comment to Plaintiff that "you better take those

pills because your pregnancy is really starting to affect your work here at the office."

- AMS Branch Manager Feador's comment to Plaintiff that "There's no way you'll be approved for 90 days of leave. I know some girls who were pregnant, and they were back within 2 weeks. If you think you need 90 days off, I might as well start looking for your replacement now."

- AMS Branch Manager Feador's comment (immediately after Plaintiff submitted paperwork related to her request for intermittent leave) that "This is a full-time job that requires 40 hours of work."

- AMS Branch Manager Feador's comment to Plaintiff (as she was terminating Plaintiff) that "You haven't been the same since your pregnancy began and you've really been letting me down lately."

31. At no time did AMS provide a legitimate reason for its termination of Plaintiff's employment. It merely offered broad generalities about how Plaintiff's pregnancy was supposedly causing her to "lose focus," and then the company refused to even accept a doctor's note opining on whether loss of focus was to be expected.

32. At no time in the lead-up to her termination did Plaintiff receive a write-up or any sort of counseling from AMS.

33. The above-referenced comments that Plaintiff was subject to, as well as the termination, materially affected the terms of Plaintiff's employment.

34. Employees outside of Plaintiff's protected class with similar qualifications were treated more favorably than Plaintiff, i.e. were not subjected to denigrating comments, were not accused of poor work performance without being provided any specifics, and were not terminated.

35. Pursuant to 1991 Amendments to Title VII, Plaintiff is also entitled to recover punitive damages for Defendant's malicious and intentional violations of federal and state anti-discrimination laws. Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendant for its illegal conduct and to deter other employers from engaging in such conduct in an amount to be determined by the jury deemed sufficient to do so.

36. As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, inconvenience, and loss of enjoyment of life.

37. Under applicable federal law, Plaintiff is entitled to recover all of her attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**

**Violation of Title VII of the Civil Rights Act – 42 U.S.C. § 2000e *et seq.* as amended by the Pregnancy Discrimination Act of 1978, Sex Discrimination (Hostile Work Environment)**

38. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

39. Plaintiff is a member of a protected class as a female who was pregnant.

40. During her employment at AMS, Plaintiff performed her job duties according to AMS's legitimate expectations.

41. During her employment at AMS, Plaintiff was subjected to verbal conduct of a discriminatory nature that was unwelcome. Specifically, Plaintiff's employment at AMS was terminated after being subjected to numerous inappropriate and degrading comments, such as:

- AMS Branch Manager Feador's comment to Jimenez that "You need to be able to put 100% into your job despite your pregnancy."
- AMS Branch Manager Feador's comment to Plaintiff that "you better take those pills because your pregnancy is really starting to affect your work here at the office."
- AMS Branch Manager Feador's comment to Plaintiff that "There's no way you'll be approved for 90 days of leave. I know some girls who were pregnant, and they were back within 2 weeks. If you think you need 90 days off, I might as well start looking for your replacement now."
- AMS Branch Manager Feador's comment (immediately after Plaintiff submitted paperwork related to her request for intermittent leave) that "This is a full-time job that requires 40 hours of work."
- AMS Branch Manager Feador's comment to Plaintiff (as she was terminating

7

Plaintiff) that "You haven't been the same since your pregnancy began and you've really been letting me down lately."

42. The above-referenced comments were sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

43. The harassing comments were both objectively offensive from the perspective of a reasonable victim and subjectively offensive from the perspective of the Plaintiff.

44. Pursuant to 1991 Amendments to Title VII, Plaintiff is also entitled to recover punitive damages for Defendant's malicious and intentional violations of federal and state anti-discrimination laws. Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Defendant for its illegal conduct and to deter other employers from engaging in such conduct in an amount to be determined by the jury deemed sufficient to do so.

45. As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, inconvenience, and loss of enjoyment of life.

46. Under applicable federal law, Plaintiff is entitled to recover all of her attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

**Violation of NRS 613.330 – Unlawful Deprivation of Employment (Sex Discrimination)**

47. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

48. AMS discriminated against Plaintiff by subjecting her to, among other discriminatory acts, adverse treatment based on her pregnancy status, including terminating Plaintiff's employment.

49. Other similarly situated AMS employees who were not pregnant were not exposed to the same discriminatory conduct.

50. As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, inconvenience, and loss of enjoyment of life.

51. As a result of Defendant's actions, it has been necessary for Plaintiff to retain the services of attorneys and she is entitled to reasonable costs and attorneys' fees.

///

**FOURTH CLAIM FOR RELIEF**

**Violation of Title I of the Americans with Disabilities Act, U.S.C. § 12101 et seq. (Disability Discrimination)**

52. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

53. While employed with Defendant, Plaintiff suffered from complications from her pregnancy which required additional doctor's appointments and medication.

54. Plaintiff's impairments substantially limited her major life activities of concentrating, thinking, communicating, and interacting with others at work.

55. However, Plaintiff was otherwise qualified to perform the essential functions of her job as long as she had reasonable accommodations from Defendant.

56. Plaintiff was open and forthcoming about her medical disabilities to Defendant, as she informed her direct supervisor, AMS Branch Manager Feador, that she was taking prescribed medication for her morning sickness. AMS Branch Manager Feador informed Plaintiff that she "better take those pills because your pregnancy is really starting to affect your work here at the office." Although Plaintiff asked for specific examples, AMS Branch Manager Feador provided none.

57. Plaintiff was open and forthcoming about her need to attend numerous doctor's appointments and with her requests to take breaks as needed and eat snacks outside of her designated lunch break as needed. Defendant was not accommodating. While Defendant permitted Plaintiff to use her accumulated paid time off for doctor's visits, after those requests were approved 4 or 5 times AMS Branch Manager Feador began harassing Plaintiff and telling her that her job required 40 hours per week and if Plaintiff needed so much time off, she might as well just fire her. Additionally, AMS strictly prohibited Plaintiff from eating at her desk at work. On more than one occasion, AMS Branch Manager Feador told Plaintiff she was not to eat at her desk for any reason and said she needed to wait until her lunch break to eat.

58. Defendant also ignored Plaintiff's repeated requests for information regarding the company's maternity leave policy. AMS failed to engage in an interactive process with Plaintiff and refused to consider reasonable accommodations.

9

59. On or about March 25, 2019, Defendant terminated Plaintiff's employment.

60. Upon information and belief, Defendant subjected Plaintiff to the adverse actions associated with her termination because of Defendant's perceptions of Plaintiff's limitations due to her disability.

61. In committing the acts and omissions alleged herein, Defendant knew or should have known that its conduct was directed to a person with a disability, thereby entitling Plaintiff to recover all damages, penalties, and/or other such remedies pursuant to federal law.

62. Defendant's actions were taken with malice and/or with reckless indifference to Plaintiff's federally protected rights.

63. As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, emotional distress, inconvenience and loss of enjoyment of life.

64. Plaintiff is entitled to recover compensatory damage due to the Defendant engaging in unlawful disability discrimination.

## FIFTH CLAIM FOR RELIEF

### Violation of NRS 613.330 – (Disability Discrimination)

65. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

66. Defendant discriminated against Plaintiff by subjecting her to, among other discriminatory acts, termination, while other similarly situated employees, who did not request an accommodation for disability entailing intermittent time off work to attend doctor's appointments, along with breaks during work including to eat when needed, were not exposed to the same discriminatory conduct.

67. As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, emotional distress, inconvenience and loss of enjoyment of life.

68. Defendant's discrimination deprived Plaintiff of employment opportunities and adversely affected her status as an employee

## DEMAND FOR JURY TRIAL

69. Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff

invokes her right to trial by jury in this civil action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant, and each of them, as follows:

1. For a judgment in favor of Plaintiff against Defendant, and each of them, on the complaint and all claims for relief asserted therein;

2. For an award of economic damages in an amount sufficient to make Plaintiff whole for past and future lost income and benefits and other economic losses suffered by Plaintiff resulting from Defendant's conduct;

3. For an award of compensatory damages from mental anguish, emotional distress, pain and suffering, humiliation, harm to reputation and other losses incurred by Plaintiff as a result of Defendant's conduct;

4. For an award of prejudgment and post-judgment interest;

5. For an award of punitive damages;

6. For an award of Plaintiff's cost of suit incurred herein;

7. For an award of attorney's fees and related expenses pursuant to § 706(k) of Title VII, 42 U.S.C. § 2000e-5(k) and other corresponding federal law; and

8. For an award of such other relief the Court may deem just and proper.

DATED this 28th day of April, 2020.

Respectfully submitted,

**MAIER GUTIERREZ & ASSOCIATES**

 /s/ Joseph N. Mott 
JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
JOSEPH N. MOTT, ESQ.
Nevada Bar No. 12455
DANIELLE J. BARRAZA, ESQ.
Nevada Bar No. 13822
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
*Attorneys for Plaintiff Rudi Jimenez*

# EXHIBIT 1

# EXHIBIT 1

EEOC Form 161 (11/16)          **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Rudi Jimenez<br>c/o REMPFER MOTT LUNDY<br>ATTN: Scott Lundy<br>10091 Park Run Dr., Suite 200<br>Las Vegas, NV 89145 | From: | Las Vegas Local Office<br>333 Las Vegas Blvd South<br>Suite 5560<br>Las Vegas, NV 89101 |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 487-2019-02064 | Juan N. Serrata,<br>Investigator | (702) 388-5058 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____ FEB 1 1 2020

Patricia A. Kane,          *(Date Mailed)*
Local Office Director

Enclosures(s)

cc:  **Ivonne Ararat**
**Director of Accounting**
**ADVANCE MEDICAL STAFFING**
**3620 N Rancho Dr. Suite 102**
**Las Vegas, NV 89130**

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

"Regarded as" coverage:
- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.